The lien of a levy under a fi. fa. is limited to the property ascertained by the inventory and appraisement.
A leasehold interest in a house and lot is not bound by a return of "levied on goods and on lands as per inquisition annexed;" no inventory being made specifying the leasehold.
Quere? If the Sheriff neglect to return an inventory and appraisement, can the plaintiff have further execution process against thedefendant?
All the judges sat except Mr. Black; this appeal being from a decree of the late Chancellor. (Johns.)
From the bill, answer, exhibits and proofs in the cause it appeared, that George Reynolds Massey, the husband of the complainant, was in his lifetime possessed under a lease for the term of 999 years of a two-story brick house, stable and outhouses and seven acres of land situate in Newcastle county; that being possessed of the said premises as afsd. he died intestate in the year 1816; that letters of administration were granted on his estate to N. G. Williamson and Victor Dupont; that the personal estate being insufficient to pay the debts of the intestate, the administrators at an Orphans' Court held at Newcastle, April 12th, 1817, preferred their petition and obtained an order of the said court for the sale of the land and real estate of the intestate; that at the time of the said order and prior thereto, to wit, on the 11th of July, 1815, a judgment was entered in the court of Common Pleas for Newcastle county as of the May term in the year afsd. at the suit of the President, Directors and Company of the Farmers' Bank of the State of Delaware against the said George R. Massey, the real debt being $2,528, with interest from the 4th November in the same year; that a writ of fi. fa. was issued thereon April 22d 1816, returnable to the May term of that year; that by virtue of the said writ the sheriff levied on the goods of the intestate then in the hands of the administrators, which by an inventory and appraisement returned by the administrators into the register's office for the said county, amounted to the sum of $1,300; that the said fi. fa. was in the hands of the sheriff at the time the said order of the Orphans' Court as afsd. was obtained; that the said administrators having obtained the order of the Orphans' Court as afsd. proceeded to advertise and publicly sold the afsd. two-story *Page 187 
brick house, stable, outhouses and seven acres of land on the ____ day of ____ in the year 1817; that the said Sarah H. Massey was the purchaser, and the consideration money, being the amount of her bid, viz. $1,175, was paid by her to the said administrators; that the return of the said sale was made, read, approved and confirmed by the said Orphans' Court in the month of April 1818, and in August of the same year a deed was executed in the usual form by the administrators, conveying the afsd. two-story brick house, stable, outhouses and seven acres of land with their appurtenances to the said Sarah H. Massey, her heirs and assigns; that Nicholas G. Williamson, one of the administrators, made a payment to Francis Haughey, sheriff, amounting to the sum of $975. By the sheriff's return of the fi. fa. No. 81, to May term 1816 issued at the suit of the bank as afsd. which is in the following words: "levied on goods in the hands of the administrators amounting to $____, and on land as per inquisition annexed, subject" — it does not appear that any inventory or appraisement was made and returned by the sheriff, nor was any sale made by him prior to the return of the said writ. It further appeared that in the year 1818 the Farmers' Bank afsd. caused to be issued a writ of venditioni exponas No. 99, to December term, 1818, under which the sheriff returned "sale made 12th deer. 1818, of Nos. 1 and 2, to James R. Black, at the price of $5,580; the sale of No. 3 (the house and lot afsd.) "countermanded by plff.'s att'y." No further proceedings were taken by the Farmers' Bank afsd. until the ____ day of ____, 1819, when the said bank caused to be issued an alias venditioni exponas No. 51, to December term 1819, for the sale of No. 3, which was stopped and the proceedings thereon restrained by the writ of injunction awarded on behalf of Sarah H. Massey the complainant below, which injunction was made perpetual by the decree of the chancellor at the hearing of the cause in the court below.
From this decree an appeal was taken and the appellants assigned the following causes of appeal: First. For that the said decree is erroneous in this, to wit, that the chancellor decreed a perpetual injunction restraining the defts. from proceeding at law upon the judgment and execution against George E. Massey mentioned in the bill of complaint, whereas the chancellor ought to have decreed that the bill of the said Sarah H. Massey the complainant below should be dismissed. Second. For that the said decree is erroneous in this, to wit, that the said decree is against the evidence and facts in the cause. Third. For that the said decree is erroneous in this, to wit, that the said decree is against the law and equity of the case.
Booth, for appellants.
The complainant applied for the aid of chancery on the ground of an agreement between Williamson the administrator of Massey and sheriff Haughey with the assent of the directors and attorney of the bank, that Williamson should sell the property of Massey instead of the sheriff, and that the amount of complainant's purchase was actually paid to the sheriff, and by him applied to the bank's execution. The ground then is fraud or something very like it. The answer of the bank denies the agreement totally. All the parties considered that this house and lot, which turned out to be but a leasehold, was a freehold and a fee simple. Upon this idea the application to the Orphans' *Page 188 
court for power to sell it was predicated, for if it was only a leasehold, the administrators had power to sell it without applying to the court. Any agreement or understanding between the sheriff and the administrators must therefore have had reference merely to the personal property, not including this house and lot which was considered and treated as realty. The execution of the bank was issued two days after Massey's death, and levied on all his personal and real property including this house and lot, which was bound by that levy whether it be considered freehold or leasehold. Being so bound the sale by the administrators could not discharge it and the bank has still a right to follow out its process to a sale, unless indeed it could be tainted with the supposed fraud of which there is no evidence.
Wales, for the respondent;
Mrs. Massey stands in the condition of a purchaser of a chattel from a person being in possession and having power to sell it. This property was not at that time levied on as personal property by this fi. fa. of the bank. What then was to prevent her purchasing it? She did purchase and pay for it and received the best evidence of her purchase, a deed. But supposing it had been levied on as personal property it was left in the hands as the administrators and they being in possession had a right to make sale of it, at least the title would pass by such a sale. The principle is that a levy does not divest the property if it be left in the hands of the party. At the time of the purchase by Mrs. Massey the sheriff had made no return of his levy and she could have no notice of a lien arising from such levy. She is therefore an innocent purchaser without notice. The return of the sheriff is levied on property in the hands of the administrators. After such a return the bank could not proceed further until they showed that this levy was not a satisfaction of the debt. It is a levy to an uncertain amount, and there is no inventory or appraisement. Before they could proceed against the land they must show a disposition of the goods levied on. A levy to an uncertain amount is a satisfaction of the execution until the amount appear to be insufficient. Then even considering this as real property, there is an end to the bank's claim, until the property levied on shall have been disposed of. Plff. cannot take out a second execution until the first fails to be satisfied; and this although the sheriff has not sold the goods nor returned the writ. 2 Wils. Bac. Ab. 717, 720. Execution,D. If goods be levied on and not taken out of the party's hands they may be legally sold and the purchaser without notice is protected. 9 Johns. Rep. 131. A levy without a seizure does not divest the property. 4 East 523. But here the fi. fa. was not returned to the proper term nor for two years after. The bank lay by and did not procure a return. This is evidence of their acquiescence in the arrangement between the administrators and the sheriff. The next step which they did take in execution of their judgment was directed against Nos. 1 and 2, other property of Massey leaving this leasehold untouched. Then as to the levy. A levy on freehold will not bind leasehold property, the one being realty and the other personalty. Even if the bank had a lien on this property by virtue of their unreturned writ the countermand of the venditioni exponas removed that lien. This is the smallest effect of such a countermand; *Page 189 
it would probably amount to a satisfaction; at all events it would remove the lien as regards a bona fide purchaser without notice. A levy made after the fi. fa. was returnable would not bind — the return two years after is evidence that the levy was made too late. Either on legal principles, then, or equitable, we are entitled to the protection afforded us by the chancellor's decree.
Booth, for appellants, in reply.
How can Mrs. Massey be regarded as a purchaser with notice? The house and lot were considered by all as real property and were sold as such by proceedings in the Orphans' Court. Mrs. Massey, taking her title under those proceedings, had notice of them and of all the accompanying circumstances. The judgments and liens were produced there. She thus had notice of and purchased subject to them. The property was levied on as freehold; inquired on as such. How can this be a less binding as a levy if the interest of the defts. turn out to be less than that supposed? Whatever that interest is it covers, especially where the levy is upon a greater interest than that possessed. The greater includes that less; and a levy on a freehold is a good levy on a leasehold. The English rules of seizing property on execution, and the consequences of leaving it with the deft. do not apply here. Our practice is different.
After a full statement of the case, he said —
"The only question necessary to be considered in this cause is as to the extent and effect of the lien and levy under the writ of fi. fa. which was issued April 22d, 1816, and returned by the sheriff in the year 1818. The act of assembly relative to execution process renders it the duty of the sheriff on receiving the writ of fi. fa. to make the levy, and describes in a very special manner how he is to perform his duty, and requires that he should particularly specify each article of personal property and return an inventory and appraisement of the same at the court to which the said writ is made returnable; and in case of failure so to do, by the said act, the officer is made liable to the execution creditor for the whole amount of his debt.Dig. 207. Upon a proper construction of the provisions of this act the sheriff in this case having returned his writ and made no inventory and appraisement as therein is prescribed the right of the plff. to any further proceedings under the said writ may be questioned. Independent however of this ground it is well settled that when a levy has been made under a fi. fa. and the same is returned with an inventory and appraisement the lien of the execution is limited and confined to the personal property actually taken, and by the inventory and appraisement ascertained. This being the established law relative to execution process the subsequent proceedings must be restricted to the property levied upon by the fi. fa. on which they are founded; and hence the venditioni exponas cannot give authority to the sheriff, or legally authorize the sale of personal property not embraced by the levy. If then we apply this rule of law to the case before the court, the special return made by the sheriff under the fi. fa. decides the question. The return made by Francis Haughey, sheriff, is in the following words: Fi. fa. No. 81. May term 1816, levied ongoods in the hands of the *Page 190 
administrators amounting to $____ and on lands as per inquisition annexed, subject.' From the peculiar phraseology of this return it is manifest the sheriff had not levied upon any chattel interest, and that the leasehold interest in the lands and premises mentioned in the bill of complaint cannot be affected; it is evidently omitted; and from the bill and answer it does not appear that at the time of the levy made, the parties complainant and defendant had any knowledge of its existence. The extent of the lien under the fi. fa. being thus ascertained and defined by the levy and return, the venditioni exponas could not operate further than to authorize a sale of the goods of the intestate; and the additional words "and on land as per inquisition annexed subject" are from their import restricted to the freehold interest, and cannot include the leasehold interest. The alias venditioni exponas which issued could have no larger or greater operation than the first. The leasehold interest not being embraced by the inventory and appraisement, and the fi. fa. having been returned at the May term, 1818, the administrators of Massey, the intestate, were lawfully in possession of the leasehold interest; and in the year 1817, when they made sale of the two-story brick house and premises the same "was not subject to or affected by any lien under the fi. fa. No. 81, issued by the bank in April 1816; and as administrators they had power to sell the same.
The Court therefore are of opinion that the decree below be affirmed."